#2004773

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION



FILED
JUL 28 2025
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

TIMOTHY C. DUNLAP II,
Plaintiff,

v.

Civil Action No. 2:25-cv-470

Honorable: _____

MORGAN M. SWITZER,
Defendant.

## COMPLAINT

COMES NOW, the Plaintiff, Timothy C. Dunlap II ("Plaintiff"), proceeding Pro Se, and hereby files this Complaint against the Defendant, Morgan M. Switzer ("Defendant"), alleging violations of his civil rights under 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this is an action arising under the Constitution and laws of the United States. This action arises under 42 U.S.C. § 1983, which provides a cause of action for the deprivation of rights secured by the Constitution and laws of the United States. Specifically, Plaintiff alleges that Defendant violated his First and Fourteenth Amendment rights.

2. Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Kanawha County, West Virginia, which is within the Southern District of West Virginia.

## PARTIES

3. Plaintiff Timothy C. Dunlap II was a resident of Kanawha County, West Virginia and lived at 1062 Ferrell Road, Saint Albans, WV 25177 when these events took place. Plaintiff is now a resident of Putnam County, WV and lives at 141 Windsong Acres Road, Winfield, WV 25213.

4. Defendant Morgan M. Switzer is a resident of Kanawha County, West Virginia. At all times relevant hereto, Defendant was a licensed attorney in the State of West Virginia, a member of the West Virginia Bar Association, and was acting under color of state law as a court-appointed Guardian ad Litem in Plaintiff's custody case, 22-D-711, in the Family Court of Kanawha County, West Virginia. Morgan M. Switzer lives at 1213 Oakmont Road, Charleston, WV 25314.

## FACTUAL BACKGROUND

5. On August 31, 2023, Defendant was appointed Guardian ad Litem in Plaintiff's custody case, 22-D-711, in the Circuit Court of Kanawha County, West Virginia.

6. Plaintiff alleges that Defendant used her position as Guardian ad Litem and as a Political Candidate for Kanawha County Prosecutor to retaliate against him for exercising his right to free speech. Defendant also held her role as Guardian ad Litem, and refused to recuse herself from Plaintiffs custody case, even though it was a severe conflict of interest, as Plaintiff was already outspoken about her political candidacy for Kanawha County Prosecutor that she announced prior to her appointment, and her previous criminal record where in North Myrtle Beach, SC the Defendant was charged with:

May 12, 2016 - Public Disorderly Conduct

May 12, 2016 - Resisting Arrest

May 12, 2016 - Interference with Official In the Performance of Duty

2

May 12, 2016 - Threatening an Official In Performance of Duty

May 12, 2016 - Giving False Name and Address

7. Beginning shortly after Defendant's appointment, she engaged in a pattern of retaliatory actions against Plaintiff for exercising his right to free speech. These actions included, but were not limited to, falsely reporting Plaintiff for election fraud to the West Virginia Secretary of State's Office and making false statements to the Dunbar Police Department, which led to Plaintiff's suspension and eventual termination from the Dunbar Police Reserve Unit.

8. **Exhibit A** - Defendant allegedly threatened to continue filing reports against Plaintiff and to interfere with Plaintiff's relationship with his children if Plaintiff did not stop speaking out against her politically. On April 4, 2024, Defendant sent an email to Plaintiff stating:

> **"Further, 6 days ago (which was AFTER the hearing that didn't go well for Mr. Dunlap), Mr. Dunlap thought it was appropriate to post my opponent's recent endorsement with a caption that said, "Pretty easy to get endorsements when you don't have a criminal past." I want Respondent Father to know, and to sincerely understand, that his words, posts on Facebook, slanderous websites and Facebook pages, weird reports of nude photos, and attempts to "expose" me are falling very short of his desired result. In fact, every single time he attempts to control this situation through this type of bullying, it has the opposite effect for Mr. Dunlap. Every single post, every disrespectful text, every untrue and shocking accusation against me, every attempt to control the narrative**

3

and blame Morgan Switzer for the Court's decisions--Mr. Dunlap is drinking the proverbial poison but expecting me to die. Something has to change here. Not for me and not even for Mr. Dunlap, but for the girls. If there isn't some significant change in course, I fear that the girls are going to suffer the most, which is the only thing we should all be acting to avoid from this point forward. For that reason, I am going to suggest, via motion, that we take additional steps to change the course of things. I will get with the lawyers to discuss next steps, but I wanted Respondent Father to read this message directly from me in hopes that he will understand how grave this situation really is, and that he will finally adjust his course for the sake of his two young daughters. I am saying this with all the sincerity in my heart : Mr. Dunlap, my reputation, my bar license, my election---none of that is going to suffer even a fraction because of you. You won't move the needle one way or another. You do not hold that kind of power. You never did and you never will. I say that in a desperate attempt to dissuade any further efforts by Mr. Dunlap to "get back at me" for my work in this case. The time and effort spent on that needs to be spent elsewhere so that these children can move forward in the healthiest way possible. I genuinely want the outcome to be different than what I fear it will be, and I want to get Mr.

> Dunlap the help he needs and the support he needs to put all this behind him. A good outcome is not impossible here. We just need to figure out a way to get the issues addressed, repair the damage done, and build good foundation for the future."

Plaintiff alleges this email was sent in response to Plaintiff's criticism of the Defendant's campaign for political office, as she was running for Kanawha County Prosecutor. Plaintiff alleges that Defendant's email constituted a threat to continue abusing her position as Guardian ad Litem if Plaintiff continued to exercise his freedom of speech.

9. Defendant also allegedly made similar threatening statements via email sent to Plaintiff on May 3, 2024 via email which stated:

> "Also, just in case it wasn't clear before, I provide information to the Secretary of State on a daily basis as a result of the baseless and defamatory allegations on the website, Facebook page, and elsewhere. It turns out, that stuff is illegal. The research I've done has revealed a lot of information that I have immediately turned over. I will continue to work with them and we will get to the bottom of all of it in due time. With that said, I would strongly encourage you to go back to the SOS and tell the truth. The people you're protecting aren't protecting you in the same fashion, I can assure you of that. It's also important to point out, Mr. Dunlap, that it doesn't take a rocket scientist to piece this together. It's been quite easy since you filed your pro se petition. The house of cards is falling, and

5

people are talking. I'm going to be honest. I know what happened. I know you had significant involvement in the website and the Facebook page. I know that the PAC, Mountain State Safety Action, just slapped its name on it to protect people, including you, who did the dirty work. My complaint forced several hands, and I will only apply more pressure as time goes on. Without going into more detail, this is all going to come to light, and I'm not going to stop until it does. Again, I would strongly encourage you to be honest from this point forward. As it relates to your progress, you've ignored me, and I've not gotten to see anything other than the continuing erratic behavior that makes me worry about your mental health. It appears that things are continuing to deteriorate, evidenced by your issues with the employees at the SOS. They are prohibited from giving me case updates, and they have not disclosed anything confidential. They are, however, allowed to follow leads. Some leads require them to question me. Because of my knowledge of the facts and the players, I can put the pieces together pretty well. This is an attempt to, once again, to express my deep concerns for your mental health, but also to encourage you to seek the assistance we have tried to provide. Until you are thinking clearly and demonstrate impulse control, I can't recommend any type of a

> **different parenting schedule, and I will be moving to continue the hearing until you have complied with our collective decision for you to seek mental health treatment. This is in your hands, Mr. Dunlap. I hope to see some changes soon. I also hope you reconsider how your handling the SOS investigation. "**

Plaintiff further alleges that this email confirms she acted outside the scope of her duty as Guardian ad Litem and filing false reports to the Secretary of State that somehow Plaintiff was the mastermind behind her political downfall and her criminal record being released to the public, and retaliating against the Plaintiff for his constitutionally protected freedom of speech, and continually threatened to **"I can't recommend any type of a different parenting schedule, and I will be moving to continue the hearing…"**

10. **Exhibit C** - On April 25, 2024, Defendant sends another email stating:

> **"As I have said before, I am very optimistic about the future of this case. However, there are things we still need to tend to in order to move forward in a positive and effective manner. Unfortunately, because of Mr. Dunlap's actions, those things directly relate to my career, and I deserve resolution in some of those loose ends."**

Plaintiff avers again, that this email confirms political retaliation, as the Defendant states, **"those things directly relate to my career, and I deserve resolution in some of those loose ends."**

11. **Exhibit D** - Defendant also allegedly made similar threatening statements in text messages sent to Plaintiff and his attorney, Mr. Tim Carrico in a string of text messages on April 28, 2024 at 2:56 pm through May 17, 2024 via text message which stated:

> "Mr. Dunlap, I am going to ask you politely to reconsider your actions on social media once again. You're not demonstrating that you're moving towards stability."

(cont. May 1, 2024 at 11:03 am)

> "All three of us need to have a conference call as soon as possible"

(cont. May 6, 2024 at 7:01 pm)

> "Defendant sends two picture of Plaintiff promoting her opponent from a news website and follows up with a text message: "You talk to the SOS yet, tim?'

(cont. May 17, 2024 at 9:19 am)

> "Hey, Dunlap has until 10:30 am to tell me where he is going to attempt to seek medical intervention, what steps he has taken so far, and if he has received a diagnosis that can be supported by medicine. If yes, what meds? If I don't get that information or a response by 10:30, I'll take my next step."

(cont. May 17, 2024 at 10:29 am)

> "Contempt and request for incarceration being filed. Thanks."

12. The retaliatory nature of Defendant's actions is further evidenced by the timing of certain filings in Plaintiff's custody case. Three days after losing the May 14, 2024 election for Kanawha

8

County Prosecutor, Defendant filed a motion requesting Plaintiff's incarceration for contempt. This motion was devoid of any evidentiary basis and appeared to be a direct reprisal for Plaintiff's political speech against Defendant during the election campaign, and for the Defendant losing the election. The motion contained threats to incarcerate the Plaintiff. On May 17, 2024, Defendant also threatened Plaintiff via text message, stating 'Contempt and request for incarceration being filed,' two days before her motion to incarcerate was filed." A true and accurate copy of Defendant's Motion for Contempt and Incarceration is attached hereto as **Exhibit E**, where its further evidence that the Defendant requested incarceration because of political post (page 3):

> **"For example, Mr. Dunlap recently posted on several of your Guardian's mother's Facebook posts about the Guardian's political candidacy, which is how the Respondent Father has consistently chosen to retaliate against your Guardian. Though this type of behavior would not be concerning or noteworthy if Respondent Father and the Guardian were in different situations, the action of mocking or putting a "laughing emoji" on the Guardian's political post is Respondent Father's way to continue to test the Court's patience, to taunt the Guardian Ad Litem under the guise of his "first amendment rights", and to be retaliatory and intimidating towards the Guardian, once again. Further, his retaliatory actions are occurring in the same manner as previously ruled contemptuous by this Court. Further, Respondent Father continues to be uncooperative**

9

> with the West Virginia Secretary of State as they investigate the several allegations of campaign violations that Mr. Dunlap was involved with. It it your Guardian's deeply held belief that Respondent Father has not been truthful with the Secretary of State, as assertions to the assigned investigator differed from the averments included in his pro se petition for contempt against your Guardian. Finally, Respondent Father chose to comment publicly on a news story regarding the Guardian's candidacy for office."

Defendant goes on to request continuation of child custody proceedings to a date of "UNCERTAIN" in retaliation of political posts and states on page 4 of her request for incarceration:

> "WHEREUPON, it is the request of your Guardian that this Court CONTINUE the Final Hearing in this matter, which is set on May 30th, 2024, to a date uncertain. Your Guardian also requests that this Court ORDER Respondent Father to meaningfully engage with the Guardian Ad Litem so that progress can be made in this case, and to ADMONISH the Respondent Father as to his continuous retaliatory social media harassment against your Guardian. Finally, your 4 Guardian respectfully requests that this Court FIND that the Respondent Father has not acted to purge the Direct Contempt of Court stemming from the hearing on March 28th, 2024, and further

> **requests that this Court immediately REMAND Respondent Father into the custody of the South-Central Regional Jail for a period of not more than 10 days, or alternatively, that this Court issue an Order to Show Cause as to why Respondent Father should not be sanctioned for his intentional failure to purge the previously issued Direct Contempt of Court."**

13. Plaintiff further alleges that Defendant filed false and misleading reports with the family court, making him appear to be an unfit parent, and that Defendant failed to investigate allegations of wrongdoing by the children's mother. Defendant admitted her own bias in her communications with Plaintiff and other parties.

14. Plaintiff avers that "quasi-judicial immunity" does not apply to Defendant, due to Defendant acting in a political role and as Guardian ad Litem, and using her position as Guardian ad Litem to retaliate against the Plaintiff for speaking out against her politically, violating his Constitutional rights. Immunity protects only functions "intimately associated with the judicial phase of the process." *Butz v. Economou*, 438 U.S. 478 (1978). Allegations here include acts outside the scope of Guardian ad Litem duties (e.g., political retaliation and misuse of state employment), which are administrative or personal, not judicial. See *Miller v. Lambert*, 195 W. Va. 63, 464 S.E.2d 582 (1995) (immunity is not absolute when conduct exceeds role). Petitioner alleged Respondent's dual role as Guardian ad Litem and political candidate created a conflict of interest violating First Amendment protections. *State ex rel. Verizon W. Va., Inc. v. Matish*, 230 W. Va. 489, 740 S.E.2d 84 (2013). The Defendants candidate status required her recusal and quasi-judicial immunity does not shield personal or political motives. In re Dandy, 224 W.Va.

105, 680 S.E.2d 120 (2009) (GAL duties end at appointment scope and cannot infringe constitutional rights).

## COUNT I: FIRST AMENDMENT VIOLATION AND RETALIATION

15. Defendant, acting under color of state law as a court-appointed Guardian ad Litem and Political Candidate for Kanawha County Prosecutor, retaliated against Plaintiff for exercising his First Amendment right to freedom of speech by threatening Plaintiff and taking actions that negatively impacted his custody case.

16. Defendant's actions were motivated by Plaintiff's political speech against her and were intended to chill Plaintiff's exercise of his First Amendment rights.

17. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to emotional distress and damage to his relationship with his children.

## COUNT II: FOURTEENTH AMENDMENT VIOLATION

18. Defendant's actions as Guardian ad Litem and a Political Candidate for Kanawha County Prosecutor violated Plaintiff's Fourteenth Amendment right to due process by failing to conduct a fair and impartial investigation and by making biased recommendations to the court based on Plaintiff's protected speech.

19. As a result of Defendant's actions, Plaintiff suffered damages, including but not limited to: unnecessary legal fees for continued court hearings, parental fitness evaluation, attorney fees, emotional distress and damage to his relationship with his children.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaratory judgment that Defendant violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

B. Compensatory damages for the injuries suffered by Plaintiff as a result of Defendant's unconstitutional conduct in the amount of $1,000,000;

C. Punitive damages to deter Defendant and others from engaging in similar conduct in the future in the amount of $500,000;

D. Attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988; and

E. Immediate Investigation from the Office of Disciplinary Counsel and Secretary of State for the suspension and revocation of Defendants BAR License in the State of West Virginia for her unconstitutional actions while assigned as Guardian ad Litem and Political Candidate for Kanawha County Prosecutor;

F. Permanently enjoin Defendant from practicing law in the state of West Virginia;

H. Such other and further relief as this Court deems just and equitable.


Respectfully submitted this 28th day of July 2025,


*[signature]*

Timothy C. Dunlap II
Pro Se
141 Windsong Acres Road
Winfield, WV 25213
Cell: 910-797-8088
Email: timothy.c.dunlap@gmail.com

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TIMOTHY C. DUNLAP II,
Plaintiff,

v.

Civil Action No. 2:25-cv-00470

Honorable: _____

MORGAN M. SWITZER,
Defendant.

## CERTIFICATE OF SERVICE

I, Timothy C. Dunlap II, do hereby certify that I served a true and exact copy of the foregoing:

**COMPLAINT ALLEGING VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

upon each of the following after filing with the Clerk of Court via The United States District Court, Southern District of West Virginia:

1. Morgan M. Switzer, 1213 Oakmont Road Charleston, WV 25314

Respectfully submitted this 28th day of July 2025,

*[signature]*

Timothy C. Dunlap II
Pro Se
141 Windsong Acres Road
Winfield, WV 25213
Cell: 910-797-8088
Email: timothy.c.dunlap@gmail.com

14